IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL KARIM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 4803 |
| | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | Judge Presiding |
| MICHAEL LEMKE, et al., | ) | |
| | ) | Honorable Judge Susan E. Cox |
| Defendants. | ) | Magistrate Judge |

## IDOC DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendants Michael Lemke, Troy Johnson, Tarry Williams, Ricardo Tejeda, Regina Beattie, Royce Brown-Reed, and Quinten Tanner ("IDOC Defendants"), by and through their attorney Lisa Madigan, Attorney General of Illinois, hereby submit the following memorandum of law in support of their Partial Motion for Summary Judgment, and state the following:

### I. INTRODUCTION

Many of Plaintiff's myriad conditions claims are unsupported by both law and the facts of this case. Defendants are therefore entitled to judgment as a matter of law with respect to these claims.

Plaintiff's Complaint alleges that, between 2013 and 2015, he was subjected to unconstitutional conditions of confinement at Stateville Correctional Center. (Defendants' Statement of Uncontested Facts, "DSOF," at ¶ 1). Plaintiff takes issue with nearly every aspect of his incarceration. In light of the Seventh Circuit's recent decision in *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), Defendants seek only partial summary judgment. Specifically, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims

1

regarding: (i) the quality of the food and water he received at Stateville; and (ii) the quality of his shelter in Bravo-house. Furthermore, Defendants Regina Beattie and Royce Brown-Reed should be dismissed entirely from this case as they had insufficient personal involvement in the alleged violations.

## II. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008) "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995) (internal citation omitted).

If the evidence is only colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). The initial burden of the moving party is to establish that there is no question of fact that will be outcome determinative in the case. *Id*. Once the moving party has met this burden, the opposing party must set forth specific facts that show there is a genuine issue of material fact. *Id.* The opposing party cannot rely on general conclusory allegations, but "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007) (internal citation omitted). Once the moving party seeking summary judgment meets its initial responsibility of informing the Court of the basis for its action and identifying

the portions of those pleadings and supporting documents which it believes demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to demonstrate a genuine issue of material fact. *Anderson,* 477 U.S. at 250.

### III. LEGAL STANDARD PURSUANT TO 42 U.S.C. § 1983

#### A. Eighth Amendment Standard

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." *U.S. CONST. amend. VIII*. This prohibition is applicable to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660 (1962).

"The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of 'the minimal civilized measure of life's necessities,'' and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray*, 826 F.3d at 1005 *quoting Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To prevail on an Eighth Amendment claim, a plaintiff must show that prison officials deliberately ignored conditions of confinement that failed to meet contemporary requirements of minimal decency. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir.2008); *Delaney v. DeTella,* 256 F.3d 679, 683 (7th Cir.2001). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment." *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir.1997), *citing Farmer, supra,* 511 U.S. at 833–34. "[E]xtreme deprivations are required to make out a conditions-or-confinement claim." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Duckworth v. Franzen,*

780 F.2d 645, 652-53 (7th Cir. 1985). Deliberate indifference constitutes unnecessary and wanton infliction of pain, which is "repugnant to the conscience of mankind," or which is "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." *Estelle* at 106-07. Negligence, gross negligence, or even tortuous recklessness is not enough. *Id.*

The Eighth Amendment entitles prisoners to humane conditions of confinement that provide for their "basic human needs." *Rice v. Corr. Med. Servs.,* 675 F.3d 650, 664 (7th Cir.2012) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). This includes "adequate food, clothing, shelter, and medical care." *Sain v. Wood,* 512 F.3d 886, 893 (7th Cir.2008) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). However, the Eight Amendment neither requires "the most intelligent, progress, humane, or efficacious prison administration," *Oliver v. Deen,* 77 F.3d 156, 161 (7th Cir.1996), nor demands that prison officials provide inmates with "more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella,* 255 F.3d 470, 472 (7th Cir.2001).

### B. Requirement of Personal Involvement

"The Constitution does not make public employees strictly, let alone vicariously, liable for injuries that befall their charges." *Pacelli v. deVito*, 972 F.2d 871, 875 (7th Cir. 1992). The employees must know about the problem and intend that it continue. *Id*. They must act with deliberate or reckless disregard of an inmate's constitutional rights or the constitutional deprivation must occur with the defendant's knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). The doctrine of *respondeat superior* does not apply to actions brought under § 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, to be held individually liable, a defendant must be "personally responsible for the deprivation of a

constitutional right." *Id*. (internal citation omitted). A plaintiff must demonstrate personal involvement by showing that defendants knew about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (internal citation omitted).

### C. Deprivation of a Single, Identifiable Human Need

The Supreme Court places an important limitation on an offender's right to pursue a claim regarding the conditions of his confinement. The Supreme Court has held there can only be cruel and unusual conditions of confinement where there has been a deprivation of a *specific* human need. "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (emphasis in original). The Supreme Court continued, "[t]o say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305. While offender-plaintiffs have often argued that their 'overall conditions' violated their Eighth Amendment right, this claim is legally insufficient. Rather, the Seventh Circuit has continued to cite apply the *Wilson* rule by breaking its decisions down with respect to the discrete human need at issue. *See e.g.*, *Smith v. Dart*, 803 F.3d 304, 309–10 (7th Cir. 2015).

Taking the Seventh Circuit's cue, Defendants too will analyze Plaintiff's claims with respect to each "single, identifiable human need" of which he claims he has been deprived. *Id.*

5

## IV. ARGUMENT

**A. Plaintiff's Claims Regarding the Food and Water at Stateville**

*1. Cold Breakfasts*

Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claim that he was served cold breakfasts. (*See* DSOF, at ¶ 8). This claim fails both prongs of the Eighth Amendment test. First, the alleged condition of confinement (cold meals) is not sufficiently serious to deprive Plaintiff of any of the measures of civilized society. *See Wilson*, 501 U.S. at 304. Furthermore, Plaintiff did not suffer (or even allege to have suffered) harm arising out of his cold breakfasts. "Prisoners cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988). While prisoners do have a right to adequate nutrition (*see Farmer v. Brennan,* 511 U.S. 825, 833 (1994)), "there is no right to appetizing meals—no right to hot breakfasts." *Jefferson v. Hodge*, 2013 WL 2284953, at *7 (S.D. Ill. May 22, 2013). *See also Lunsford v. Bennett,* 17 F.3d 1574, 1578 (7th Cir.1994) (complaint about "cold, poorly prepared beans" did not state Eighth Amendment claim); *Pritchett v. Page*, 2002 WL 1838150, at *5 (N.D. Ill. Aug. 12, 2002) ("cold meal breakfasts instead of hot cereal do not implicate any constitutional rights"). Therefore, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's complaints regarding the temperature of his breakfast.

*2. Inclusion of Soy in Plaintiff's Diet*

Defendants are likewise entitled to judgment as a matter of law with respect to Plaintiff's generalized complaints regarding the inclusion of soy in his diet. (DSOF, at ¶¶ 2-3). There have been many cases in this Circuit that have considered—and rejected—claims identical to the one Plaintiff has made regarding the soy in his diet. *See e.g.*, *Riley-El v. Godinez*, 2015 WL 4572322,

at *3–4 (N.D. Ill. July 27, 2015) ("the alleged risks posed by consuming a soy-rich diet do not rise to the level of an Eighth Amendment violation"); *Stallings v. Hardy*, 2013 WL 5781805, at *9 (N.D. Ill. Oct. 25, 2013) (granting judgment in favor of Warden with respect to claims of excessive soy in offender's diets at Stateville); *Harris v. Brown,* 2014 WL 4948229 (C.D.Ill. Sept. 30, 2014) (rejecting prisoners' claim that excessively high amounts of soy in Illinois' prison food threatened their health).

The main thrust of each of these decisions is that an alleged risk violates the Eighth Amendment *only* if it is one that "society considers ... so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney,* 509 U.S. 25, 36 (7th Cir.1993). Yet, as the Court in *Harris* noted, soy is ubiquitous in the American diet, and "society today simply does not see soy protein as a risk to the general population, must less a serious risk." *Harris*, 2014 WL 4948229 at *13–14.

The same is true of Plaintiff's generalized complaints regarding the soy in his diet at Stateville. Plaintiff vaguely contends that his diet is "rich in soy and soy genetically altered and given to him well over the daily recommended allowance." (DSOF, at ¶ 3). During his Deposition, however, Plaintiff admitted that he does not know what the daily recommended allowance of soy is. (DSOF, at ¶ 4). When asked why he believes he has been given soy in excess of the daily recommended allowance, Plaintiff responded: "Because I get soy every day all day, three meals a day." (DSOF, at ¶ 5). Yet, the IDOC Master Menus, demonstrate only a minimal presence of soy, if any. (DSOF, at ¶ 6). These menus reveal that offender diets include a variety of foods. For example, during 2015, the Master Menu indicates that the Sunday meals during the first week of the month would comprise of the following: cold cereal, breakfast gravy, biscuit, juice, milk, meatballs, gravy, steamed rice, glazed carrots, fruit, dinner roll, margarine,

7

Turkey/Ham, sauce, pinto beans, green beans, gelatin dessert, cornbread, and margarine. (DSOF, at ¶ 7).

Soy is prevalent inside and outside of prison. There is no evidence that Plaintiff was exposed to a level of soy that society has deemed unacceptable. Thus, Defendants are entitled to judgment as a matter of law with respect to this claim. *See Helling v. McKinney,* 509 U.S. at 36.

3. Water Supply

Defendants are also entitled to judgment as a matter of law with respect to Plaintiff's claim that the water at Stateville is contaminated. Plaintiff is certainly not the first offender to make this particular claim. *See Carroll v. DeTella*, 255 F.3d 470 (7th Cir. 2001). Yet, the courts in this Circuit have consistently held that the evidence sufficiently demonstrates that the water at Stateville does not violate offenders' Eighth Amendment rights. *Riley El v. Godinez*, 2016 WL 4505038, at *9 (N.D. Ill. Aug. 29, 2016) ("Defendants having submitted evidence demonstrating that the levels of contaminants in Stateville's water were acceptable during the relevant time period, and Plaintiff having failed to controvert that evidence or demonstrate that he has been deprived of drinking water, summary judgment on this claim is appropriate"); *Allen v. Hardy*, 2012 WL 5363415, at *8 (N.D. Ill. Oct. 26, 2012) ("Plaintiff provides no evidence that water supply at Stateville contains systemic contamination that constitutes a violation of his constitutional rights"); *Mejia v. McCann*, 2010 WL 5149273, at *9 (N.D. Ill. Dec. 10, 2010) ("it is a fact of life that the water in this region has high levels of radium and radon. Plaintiff has not, and surely cannot, suggest that prison officials have actually poisoned the water").

The Seventh Circuit has addressed the constitutionality of Stateville's drinking water. *Carroll*, 255 F.3d at 742. The Court in *Carroll* affirmed summary judgment for Defendants on the basis that the evidence showed that the contamination levels then present in Stateville's water

did not violate EPA standards and would not have required Defendants to take remedial action had they been detected outside a prison. *Id.* at 472-73. The court explained that deliberately supplying inmates with water containing carcinogens and contaminants can be considered cruel and unusual punishment. "But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not." *Id.* at 742. "Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Id.*

Plaintiff's claims regarding the water fail as a matter of law for the same reasons identified in *Carroll*, *Allen*, *Mejia*, and *Riley El*. As the Seventh Circuit noted, a prison does not have the duly to provide water that is "completely free from pollution or safety hazards." *Carroll,* 255 F.3d at 472. There is no evidence that the water at Stateville during the relevant period, 2013 to 2015, contained contaminants that exceeded an amount regularly tolerated by the American public. In fact, the evidence demonstrates that the water at Stateville was regularly tested by the Illinois Environmental Protection Agency ("EPA") during the time relevant to Plaintiff's Complaint. (DSOF, at ¶¶ 18-19). The Illinois EPA consistently found no violation when it tested for the presence of regulated water contaminants. (DSOF, at ¶¶ 18-19). Thus, Defendants are entitled to judgment on this claim as a matter of law.

### B. Plaintiff's Claims Regarding his Shelter

*1. Lead Paint*

Defendants are additionally entitled to judgment as a matter of law with respect Plaintiff's claim that his cells at Stateville contained underlying coats of lead paint. (DSOF, at ¶ 12).

To begin, there is no evidence that the underlying coats of paint at Stateville contain lead. According to Plaintiff, "plaintiff has lived in various cells within Stateville that have layers of 30-35 years of old paint with lead in them. Every so often, the lead paint is just pained over and over without neutralizing the lead paint substances in the old lead paint." (DSOF, at ¶ 12). However, during his deposition, Plaintiff testified that he believes there is lead in the paint "[b]ecause you can see the paint. I mean, I know it's 50 different colors under there." (DSOF, at ¶ 13). When pressed further on the issue, Plaintiff stated, "[w]ell, I don't know possibly for sure. I can't say honest—with certainty that that's—without getting a test kit, I mean, you know. But for the most part, I know that lead paint over a certain period of time when some of these paints was on these cells, they used lead in the paint." (DSOF, at ¶ 14). When asked whether he recalls ever ingesting any of the paint, Plaintiff stated, "[n]ot knowingly." (DSOF, at ¶ 15).

Yet, even assuming Plaintiff is right and the underlying coats of paint do contain lead, Defendants are nevertheless entitled to judgment in their favor. There are legions of cases from this district holding that an undercoating of lead paint is not sufficiently serious to trigger the Eighth Amendment protection. "The judges of this court have repeatedly held that claims of lead paint undercoats on prison walls are not the kind of deprivation of basic human needs redressable under the Eighth Amendment." *Mejia*, 2010 WL 5149273, at *8–9. *See also Sanchez v. McCann*, 2010 WL 1408917, at *3 (N.D. Ill. Apr. 2, 2010); *Walker v. Dart,* 2010 WL 669448, at *3 (N.D.Ill. Feb.19, 2010); *Jones v. Mitchell,* 1994 WL 517202, at *3-4 (N.D.Ill. Sept.20, 1994); *Foster v. Cooper,* 1994 WL 110180, *9 (N.D.Ill. Mar.28, 1994). "Just as inmates have no constitutional right to aesthetically pleasing food, Plaintiff had no right to a freshly-painted cell." *Lyons v. Vergara*, 2016 WL 4493455, at *10 (N.D. Ill. Aug. 26, 2016) *citing McGee v. Monahan*, 2008 WL 3849917, at *8 (N.D. Ill. Aug. 14, 2008).

Furthermore, Defendants are entitled to summary judgment on this claim because there is no evidence that the undercoating of allegedly lead paint caused Plaintiff any injury. "To recover damages under § 1983, a plaintiff must show both injury and 'a causal connection between that injury and the deprivation of a constitutionally protected right.' The basic tort-law rule requiring a plaintiff to show that the defendants caused the plaintiff's injuries applies with equal force to deliberate indifference claims under the Eighth Amendment." *Maus v. Murphy,* 29 Fed. Appx. 365, 369 (7th Cir.2002), *quoting Henderson v. Sheahan,* 196 F.3d 839, 848 (7th Cir.1999). *See also Mejia*, 2010 WL 5149273, at *8–9 ("Plaintiff has not submitted any competent evidence that lead paint in his cellhouse has caused him injury. Consequently, summary judgment is granted in favor of the Defendants on Plaintiff's lead paint claim"); *Allen*, 2012 WL 5363415, at *6. In light of the dearth of evidence of the presence of lead, the relevant persuasive case law, and the lack of any evidence that Plaintiff was harmed by the presence of lead, Defendants are entitled to judgment in their favor as a matter of law.

2. *Bravo-House Roof Leaks*

Defendants are entitled to summary judgment with respect to Plaintiff's claim that the Bravo cell house roof occasionally leaked (DSOF, at ¶¶ 9-10), as Plaintiff suffered no harm and suffered no substantial risk of harm.

The Seventh Circuit has considered two cases that exemplify why Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims. *Compare Pyles v. Fahim*, 771 F.3d 403, 410–11 (7th Cir. 2014) *with Anderson v. Morrison*, 835 F.3d 681, 682–83 (7th Cir. 2016). In *Pyles*, the Seventh Circuit considered whether an offender had a viable Eighth Amendment claim with respect to his allegation that the floors of the showers are slippery and therefore hazardous. *Pyles*, 771 F.3d 410-411. The Seventh Circuit held that the plaintiff-

11

offender's allegations regarding the slippery floors are "not sufficiently serious to invoke the Eighth Amendment." *Id.* The Seventh Circuit continued by explaining, "[f]ederal courts consistently have adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement." *Id.* Thus, the Court determined that the offender's complaint was correctly dismissed at the screening stage. *Id.*

Conversely, in *Anderson*, the Seventh Circuit found a material question of fact because the offender "persuasively distinguishes *Pyles* by supplying the 'more'" that was lacking in the *Pyles* pleadings. *Anderson*, 835 F.3d at 682–83. The Seventh Circuit held that the offender in *Anderson* did have a viable Eighth Amendment claim because the circumstances he faced were significantly more hazardous. *Id.* Unlike the *Pyles* case of a slippery shower, the plaintiff in *Anderson* was required to walk down a flights of stairs that was "slippery with milk" and "clogged with several days' of accumulated food and rubbish" while handcuffed. *Id.* As the Court noted, "plummeting down a flight of 13 steps presents a far greater risk of physical injury than does slipping on a shower floor." *Id.*

Plaintiff's claims with respect to the occasional leaks in the Bravo House roof are much more analogous to *Pyles* than to *Anderson*. As in *Pyles*, in this case there is no evidence of the "more" required to elevate occasional puddles into an Eighth Amendment violation. According to Plaintiff, "the roofing in Bravo House is hazardous, where whenever it naturally rains, the roof leaks massively, to the point blockades of buckets and trash cans have to be lined up to attempt to catch this water, where even then puddles of water still accumulate on the main floor of the building." (DSOF, at ¶ 9). However, during his deposition, Plaintiff testified that his cell was on the second floor of the cell house and that no water leaking from the roof entered his cell. (DSOF, at ¶¶ 10-11). Furthermore, Plaintiff does not allege that he suffered any harm (or even a

risk of harm) from the roof leaks. Thus, there is no material question of fact to be resolved and Defendants are entitled to judgment in their favor as a matter of law.

### C. No Deprivation of a Single, Identifiable Human Need

Defendants are entitled to judgment as a matter of law with respect to the foregoing alleged conditions because none of these conditions, even when considered in the aggregate, deprived Plaintiff of any "single, identifiable human need." *See Wilson*, 501 U.S. at 304. The Supreme Court identified examples of such human needs as "food, warmth, or exercise." *Id.* The Seventh Circuit has denied prison officials summary judgment on the basis that, taken as a whole, the aggregate of the conditions alleged may constitute a constitutional violation, even if each condition, standing alone, would not. *See Gray,* 826 F.3d at 1005. Yet, the circumstances in *Gray* are distinguishable. In *Gray*, the defendant sought summary judgment with respect to allegations regarding the cleanliness of the facility. However, Defendants do not challenge that particular element of Plaintiff's Complaint. Rather, Defendants' position is that *other* allegations contained in Plaintiff's Complaint, regarding alleged deprivations of other fundamental needs (food, water, shelter), do not—even in aggregate—amount to a constitutional violation. The Supreme Court's exception in *Wilson* is clear and unequivocal, the aggregate conditions may only rise to the level of an Eighth Amendment violation (when it would not, standing alone) *if* the aggregate conditions deprive an offender of a *specific* human need. *Wilson*, 501 U.S. at 305 ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists").

As demonstrated in the foregoing paragraphs, the conditions of Plaintiff's confinement at Stateville did not deprive him of his fundamental needs for food, drink, or shelter. Therefore, Defendants are entitled to judgment as a matter of law with respect to these claims.

13

### D. Personal Involvement of Defendants Beattie and Brown-Reed

Defendants Beattie and Brown-Reed should be dismissed entirely from any further proceedings in this case, as there is insufficient evidence regarding their personal involvement in the violations alleged in Plaintiff's Complaint.

Plaintiff alleges that Defendant Beattie is liable for delays in his medication refills. (DSOF, at ¶ 20). According to Plaintiff, Defendant Regina Beattie, in her capacity as Pharmacy Technician at Stateville, violated Plaintiff's rights when she "repeatedly delayed filling Plaintiff's prescription on a number of occasions." (DSOF, at ¶ 20). When Plaintiff was asked why he believes that Regina Beattie is responsible for the delay in his medication refills, Plaintiff stated, "[b]ecause she's pharmacy." (DSOF, at ¶ 21). When Plaintiff was asked whether there was any other reason why he believes Regina Beattie caused any delays in his medication refills, Plaintiff stated, "[y]es, that's the only reason that I can say…" (DSOF, at ¶ 22). According to Plaintiff, he has occasionally spoken to Ms. Beattie regarding his medication. (DSOF, at ¶ 24). However, Plaintiff cannot recall anything specific that was said during these conversations, aside from Ms. Beattie informing Plaintiff that she would look into the issue. (DSOF, at ¶ 25). In fact, Plaintiff admits that when he spoke to Ms. Beattie, or other personnel, regarding the delays in his medication refills, his medication was refilled. (DSOF, at ¶ 26).

Plaintiff's allegations against Defendant Beattie are attenuated, at best. Plaintiff can present nothing more than speculation regarding any delays in his medication. Such speculation is contrary to the requirement that a Defendant may only be liable if she was personally involved in the alleged violations. *Townsend,* 522 F.3d at 773. Rather, Plaintiff appears to pursue his claims against Defendant Beattie on a theory of *respondeat superior* liability, claiming that if there was a problem with his medication Defendant Beattie must ultimately be responsible

because of her role within the pharmacy. Such a theory of liability is inappropriate in Section 1983 litigation. *Sanville*, 266 F.3d at 740.

With respect to Defendant Brown-Reed, Plaintiff asserts that she is liable for the allegedly filthy conditions of his cell house. (Dsof, at ¶ 27). However, between 2013 and 2015, Defendant Brown-Reed was employed at Stateville as the facility's Healthcare Unit Administrator ("HCUA"). (DSOF, at ¶ 28). As Stateville HCUA, Ms. Brown-Reed had oversight responsibilities regarding offenders' access to medical care. (DSOF, at ¶ 29). Ms. Brown-Reed did not have any responsibility to maintain the safety and security of the prison grounds or facilities, to respond to prisoner complaints regarding maintenance, or to create work orders. (DSOF, at ¶ 30). Ms. Brown-Reed was not involved in facility maintenance or repairs. (DSOF, at ¶ 31). As HCUA, Ms. Brown-Reed did not have the authority to authorize maintenance or repairs of the facility. (DSOF, at ¶ 32). Rather, Ms. Brown-Reed is a medical professional who worked on the administrative side within the Healthcare Unit to monitor offender access to medical care. (DSOF, at ¶ 33).

## V. CONCLUSION

Based on the undisputed facts in this case, Plaintiff's claims against Defendants fail to establish that the quality of his food, water, and shelter violated his rights under the Eighth Amendment. Defendants are, therefore, entitled to judgment as a matter of law with respect to each of these claims. Furthermore, Defendants Beattie and Brown-Reed were not personally involved in the claims asserted against them, and thus should be entirely dismissed from any future proceeding in this case.

WHEREFORE, based on the foregoing and the reasons stated in their Motion, Defendants respectfully request that this Court enter partial summary judgment on their behalf, and grant such further relief as this Court finds reasonable and just.

Date: January 12, 2017

LISA MADIGAN
Attorney General of Illinois

Respectfully submitted,

By: */s/Summer Hallaj*
SUMMER HALLAJ
Assistant Attorney General
General Law Bureau
100 W. Randolph Street
Chicago, Illinois 60601
(312) 814-3739

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 12, 2017, she electronically filed the foregoing document with the Clerk of the Court for the Northern District of Illinois by using the CM/ECF system. Parties of record may obtain a copy of the foregoing document through the CM/ECF website.

*/s/ Summer M. Hallaj*