**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SAMUEL KARIM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 4803 |
| | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | Judge Presiding |
| MICHAEL LEMKE, et al., | ) | |
| | ) | Honorable Judge Susan E. Cox |
| Defendants. | ) | Magistrate Judge |

**DEFENDANTS' LOCAL RULE 56.1
STATEMENT OF UNCONTESTED FACTS**

Defendants Michael Lemke, Troy Johnson, Tarry Williams, Ricardo Tejeda, Regina Beattie, Royce Brown-Reed, and Quinten Tanner ("IDOC Defendants"), by and through their attorney Lisa Madigan, Attorney General of Illinois, pursuant to L.R. 56.1 and in support of their Partial Motion for Summary Judgment, hereby state the following uncontested facts:

**EXHIBIT LIST**

Exhibit A:   Plaintiff's Complaint

Exhibit B:   Plaintiff's Deposition Transcript

Exhibit C:   Water Documents Group Exhibit, IDOC 2903-2950

Exhibit D:   Master Menus Group Exhibit, IDOC 7379-7388

Exhibit E:   Declaration of Royce Brown-Reed

**I.   PARTIES**

1.   The Plaintiff in this case, Samuel Karim, was incarcerated at Stateville Correctional Center ("Stateville") between 2013 and 2015. (*See generally* Plaintiff's Complaint, attached hereto as Exhibit A).

1

2. The Defendants, Michael Lemke, Troy Johnson, Tarry Williams, Ricardo Tejeda, Regina Beattie, Royce Brown-Reed, and Quinten Tanner, were employed by the Illinois Department of Corrections ("IDOC") during some period of time between 2013 and 2015. (*See generally* Ex. A).

## II.     JURISDICTION AND VENUE

3. The events alleged in Plaintiff's Complaint occurred while Plaintiff was incarcerated at Stateville Correctional Center, in Will County, Illinois, which lies within the Northern District of Illinois. (Ex. A, at p. 2). The parties do not contest venue or jurisdiction.

4. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically 42 U.S.C. § 1983. (Ex. A, at p. 1).

## III.     MATERIAL FACTS

1. Plaintiff's Complaint alleges that, between 2013 and 2015, he suffered unconstitutional conditions of confinement at Stateville Correctional Center. (*See generally* Ex. A).

### A.  Plaintiff's Claims Regarding the Food and Water at Stateville

2. Plaintiff claims that he was provided with "a non-healthy diet in violation of law." (Ex. A, at ¶ 14).

3. Plaintiff specifically alleges that his diet was "rich in soy and soy genetically altered and given to him well over the daily recommended allowance." (Ex. A, ¶ 14).

4. During his Deposition, however, Plaintiff admitted that he does not know what the daily recommended allowance of soy is. (Plaintiff's Deposition Transcript, attached hereto as Exhibit B, at 28:1-4).

5.     When asked why he believes he has been given soy in excess of the daily recommended allowance, Plaintiff responded: "Because I get soy every day all day, three meals a day." (Ex. B, at 28:5-8).

6.     However, the master menus, attached hereto as Exhibit D, demonstrate only a minimal presence of soy, if any. (*See generally* Exhibit D).

7.     For example, during 2015, the Master Menu indicates that the Sunday meals during the first week of the month would comprise of the following: cold cereal, breakfast gravy, biscuit, juice, milk, meatballs, gravy, steamed rice, glazed carrots, fruit, dinner roll, margarine, Turkey/Ham, sauce, pinto beans, green beans, gelatin dessert, cornbread, and margarine. (Ex. D, at IDOC 7379).

8.     Plaintiff also alleges that, "throughout the year 2013 through 2015, the plaintiff has been served meals that are cold." (Ex. A, at ¶ 15).

**B. Plaintiff's Allegations Regarding the Roof in Bravo-House.**

9.     According to Plaintiff, "the roofing in Bravo House is hazardous, where whenever it naturally rains, the roof leaks massively, to the point blockades of buckets and trash cans have to be lined up to attempt to catch this water, where even then puddles of water still accumulate on the main floor of the building." (Ex. A, at ¶ 25).

10.    During his deposition, Plaintiff testified that his cell was on the second floor of the cell house. (Ex. B, at 49:4-24).

11.    Plaintiff further admitted that no water leaking from the roof entered his cell. (Ex. B, at 51:7-15).

### C. Plaintiff's Allegations Regarding the Paint at Stateville.

12. According to Plaintiff, "plaintiff has lived in various cells within Stateville that have layers of 30-35 years of old paint with lead in them. Every so often, the lead paint is just painted over and over without neutralizing the lead paint substances in the old lead paint." (Ex. A, at ¶ 27).

13. During his deposition, Plaintiff testified that he believes there is lead in the paint "[b]ecause you can see the paint. I mean, I know it's 50 different colors under there." (Ex. B, at 51:16-20).

14. When pressed further on the issue, Plaintiff stated, "[w]ell, I don't know possibly for sure. I can't say honest—with certainty that that's—without getting a test kit, I mean, you know. But for the most part, I know that lead paint over a certain period of time when some of these paints was on these cells, they used lead in the paint." (Ex. B, at 51:21-52:5).

15. When asked whether he recalls ever ingesting any of the paint, Plaintiff stated, "[n]ot knowingly." (Ex. B, at 52:21-23).

### D. Plaintiff's Allegations Regarding the Water at Stateville.

16. According to Plaintiff, "Stateville has had a history of supplying inadequate/contaminated water to its employees and inmates residents (sic)…" (Ex. A, at ¶ 43).

17. Plaintiff's Complaint states, "upon information and belief, this inadequate/contaminated water supply consist (sic) of radium, excessive amounts of microbial contaminants, such as viruses and bacteria, inorganic contaminants, such as salts and metal, pesticides, and herbicides, such as various water runoffs, organic chemicals contaminants." (Ex. A, at ¶ 46).

18. However, during the period relevant to Plaintiff's Complaint, Stateville's water was regularly tested by the Illinois Environmental Protection Agency. (*See generally* Stateville Water Documents, attached hereto as Exhibit C).

19. During its regular reviews of Stateville's water, the Illinois EPA consistently found no violation when it tested for the presence of regulated water contaminants. (*See e.g.* Ex. C, at IDOC 2938).

E. **Plaintiff's Allegations Regarding Regina Beattie**

20. According to Plaintiff, Defendant Regina Beattie, in her capacity as Pharmacy Technician at Stateville, violated Plaintiff's rights when she "repeatedly delayed filling Plaintiff's prescription on a number of occasions." (Ex. A, at ¶ 77).

21. When Plaintiff was asked why he believes that Regina Beattie is responsible for the delay in his medication refills, Plaintiff stated, "[b]ecause she's pharmacy." (Ex. B, at 94:1-3).

22. When Plaintiff was asked whether there was any other reason why he believes Regina Beattie caused any delays in his medication refills, Plaintiff testified:

> Yes, that's the only reason that I can say. Because I know once the doctor orders it, it's been even in recent history where the doctor actually ordered the medicine and then it doesn't show up. Then you go back and see the doctor again. Hey man, he gets on the phone and calls. And then for—you know, magically appears that afternoon.

(Ex. B, at 94:4-14).

23. When asked the following question, Plaintiff gave the following answer:

> Q: Is it your allegation that Regina Beattie is responsible for every delay in your medication that you've had since 2012?
>
> A: I'm saying because she's the pharmacy. She's supposed to make sure we get our meds on time.

(Ex. B, at 95:7-12).

24. According to Plaintiff, he has occasionally spoken to Ms. Beattie regarding his medication. (Ex. B, at 103:7-12).

25. However, Plaintiff cannot recall anything specific that was said during these conversations, aside from Ms. Beattie informing Plaintiff that she would look into the issue. (Ex. B, at 103:13-17).

26. Plaintiff admits that when he spoke to Ms. Beattie, or other Stateville personnel, regarding the delays in his medication refills, his medication was refilled. (Ex. B, at 103:18-22).

### F. Plaintiff's Allegations Regarding Royce Brown-Reed

27. When asked why he has named Royce Brown-Reed as a Defendant in his suit, Plaintiff responded:

> Because Royce Brown-Reed is the health care administrator, and she is responsible for the work orders and things in conjunction with the warden of operation for the facility and notifying and doing rounds and things like this. and so by her being a health care administrator, I've written her about the cold, you now, the problems that, you know, I may have had; or even she is the person who is responsible for responding to the grievances and stuff. So, you know, they send up grievances to the grievance office and the health care administrator when it's something dealing with medical. And then I done actually wrote her a letter particularly dealing with that heat and the nastiness and stuff.

(Ex. B, at 111:1-19).

28. Between 2013 and 2015, Defendant Brown-Reed was employed at Stateville as the facility's Healthcare Unit Administrator ("HCUA"). (Declaration of Royce Brown-Reed, attached hereto as Exhibit E, at ¶ 2).

29. As Stateville HCUA, Ms. Brown-Reed had oversight responsibilities regarding offenders' access to medical care. (Ex. E, at ¶ 3).

6

30. As HCUA, Ms. Brown-Reed did not have any responsibility to maintain the safety and security of the prison grounds or facilities, to respond to prisoner complaints regarding maintenance, or to create work orders. (Ex. E, at ¶ 4).

31. Ms. Brown-Reed was not involved in facility maintenance or repairs. (Ex. E, at ¶ 4).

32. As HCUA, Ms. Brown-Reed did not have the authority to authorize maintenance or repairs of the facility. (Ex. E, at ¶ 5).

33. Rather, Ms. Brown-Reed is a medical professional who worked on the administrative side within the Healthcare Unit to monitor offender access to medical care. (Ex. E, at ¶ 6).


Date: January 12, 2017                                              Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois                       By:    s/Summer Hallaj
                                                          SUMMER HALLAJ
                                                          Assistant Attorney General
                                                          General Law Bureau
                                                          100 W. Randolph Street, 13th Floor
                                                          Chicago, Illinois  60601
                                                          (312) 814-3739


**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 12, 2017, she electronically filed the foregoing document with the Clerk of the Court for the Northern District of Illinois by using the CM/ECF system. Parties of record may obtain a copy of the foregoing document through the CM/ECF website.

                                                                    */s/ Summer M. Hallaj*